UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WAKEFERN FOOD CORP. AND | : |
| JOSEPH FAMILY MARKETS, LLC | : |
| | : |
| V. | :   CIV. NO.  3:10CV827(JCH) |
| | : |
| PROSPECT PLAZA IMPROVEMENTS, | : |
| LLC, DLC MANAGEMENT CORP. AND | : |
| FIRST MAN PROSPECT PLAZA | : |
| CORP. | : |

RECOMMENDED RULING ON CROSS MOTIONS FOR
INJUNCTIVE RELIEF [Doc. #9 and 13]

Pending before the Court are Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order **[Doc. #9]** and Defendant's Motion for Preliminary Injunction and Temporary Restraining Order **[Doc. #13].**  Plaintiff's motion, construed as a Petition to Order the Parties to Arbitration [See Doc. #8], is **GRANTED** and the Court recommends that defendant's motion **[Doc. #13]** be **DENIED.**

I.  FINDINGS OF FACT

1.  Plaintiff Wakefern is a corporation organized and existing under the laws of the State of New Jersey and having its principal place of business at 5000 Riverside Drive, Keasbey, NJ 08832.  Wakefern is doing business within the district of Connecticut.  The controversy at issue relates to Wakefern's rights as the tenant of property located in the district of Connecticut.

1

2.  Plaintiff Joseph Family Markets, LLC ("Tenant") is a limited liability company organized under Connecticut law and having its principal place of business at 30 Timberline Drive, Sparta, NJ 07871.  Joseph Family Markets is doing business within the district of Connecticut.

3.  Defendant Prospect Plaza Improvements, LLC ("Landlord"), is the owner and lessor of certain real property located at 46 Kane Street, West Hartford, Connecticut.

4.  On September 30, 1983, JBG Associates, as Landlord, and First National Supermarkets, as Tenant, entered into a lease for Prospect Plaza, Kane Street, West Hartford, Connecticut ("the Lease").

5.  Defendant Prospect Plaza Improvements is the successor in interest to JBG Associates, as Landlord.  Plaintiffs Wakefern and Joseph Family Markets, LLC occupy the premises under a sublease agreement, effective April 9, 2010.

6.  Wakefern and Joseph Family Markets intend to operate the premises as a ShopRite® supermarket, which is scheduled to open on or about June 23, 2010.

7.  Immediately after the assignment of the Lease from First National Supermarkets to Wakefern, the premises were closed to the public so that plaintiffs could perform renovations and improvements at the site.

8.  On or about April 9, 2010, plaintiff Tenants requested from

2

defendant Landlord its consent to the proposed renovations and improvements and provided Prospect Plaza with a plan and specifications.

9.    The plans submitted to Prospect Plaza contemplated the replacement and upgrading of the HVAC equipment located on the roof of the premises.  The replacement of the HVAC equipment included the installation of new frames on top of the existing HVAC support frames.

10.   On or about April 16, 2010, Landlord refused to approve the plan of proposed alterations submitted by Tenant.

11.   On or about May 14, 2010, Landlord again refused to approve the proposed alterations and requested information regarding structural changes to the roof, and information related to storage, refrigeration and other units to be used in the premises.  Landlord directed plaintiffs to immediately cease all alterations of the premises.

12.   On or about May 18, 2010, Tenant Wakefern indicated that it intended to complete the alterations set forth in the plans notwithstanding its failure to obtain the consent of Landlord under Section 9.3 of the Lease.

13.   On May 19, 2010, Landlord told Tenant that the plans and specifications were insufficient for the Landlord to determine if the structural alterations should be approved and informed Tenant that Landlord would be serving a notice

3

of default under the Lease and then a subsequent notice to quit.

14. On May 20, 2010, Tenant notified Landlord that it considered the Landlord to be in default of the Lease because it continued to unreasonably withhold its consent. Tenant also provided defendants with a set of the plans and specifications as well as additional information regarding the HVAC weights and the floor configuration.

15. On May 21, 2010, Landlord served written notice on Tenant that Tenant was in default of the Lease under paragraphs 9.3(e) and 9.3(f) for performing structural alterations without the Landlord's prior written consent.  Tenant continued to perform the renovations.

16. On May 25, 2010, Landlord served a written notice to quit possession on Tenant, pursuant to Connecticut General Statutes §47a-23, terminating the Lease effective June 8, 2010.

17. The Lease includes the following paragraphs, all of which were in full force and effect at all pertinent times herein:

> 29.1.  If any default of the Tenant hereunder shall continue uncorrected: (a) as to any item of rent or additional rent after two 5 day written notices from Landlord to Tenant; or (b) as to any obligation of Tenant under this Lease, other than the payment of any item of rent or additional rent; for thirty (30) days after written notice thereof from Landlord to Tenant, then Landlord may, by giving ten (10) days written notice to Tenant, at any time thereafter during the continuance of such default either: (x) terminate this

Lease; or (y) re-enter the Demised Premises by summary proceedings or otherwise, expelling Tenant and removing all property therefrom and reletting the Demised Premises at the best possible rent obtainable . . .If any default by Tenant (except for payment of any item of rent or additional rent) cannot reasonably be remedied within thirty (30) days after written notice of such default to Tenant, then Tenant shall have the additional time reasonably necessary to remedy same before this Lease can be terminated or other remedy enforced by Landlord.  Notwithstanding the foregoing provisions of this paragraph, in the event that Tenant shall receive written notice from landlord of any alleged default of Tenant under this Lease, for other than payment of any item of rent or additional rent, and if Tenant shall notify Landlord in writing, within fifteen (15) days after receipt of such notice from Landlord, that it disputes Landlord's contention that such a default has occurred, then such matter shall be submitted to arbitration for determination; if said arbitration shall determine that Landlord's contention is correct, then Tenant's time to cure such default as hereinabove in this paragraph provided, shall commence to run from the date that Tenant shall receive such written notice of such arbitration decision.

38.1 In any case where this Lease provides for submission of a dispute or matter to arbitration, the same shall be settled by arbitration in Hartford, Connecticut in accordance with the procedural rules then obtaining of the American Arbitration Association or any successor thereto.

18.  On May 26, 2010, plaintiff Tenant filed an application for

temporary restraining order and preliminary injunction in this

Court.

19.  On May 27, 2010, defendant Landlord Filed an application for

temporary restraining order and preliminary injunction in this

Court.

20.  The amount in controversy exceeds $75,000, exclusive of

interest and costs.

23.  The lease evidences a transaction or transactions involving

interstate commerce.

24.  The lease is governed by Connecticut law.

5

II.   <u>STANDARD OF REVIEW</u>

     The standard for issuance of a preliminary injunction in
this circuit is well established; the moving party must
"demonstrate both irreparable harm and a likelihood of success on
the merits or a sufficiently serious question regarding the
merits to make it a fair ground for litigation with the balance
of hardship tipping decidedly in its favor."  <u>Tucker Anthony
Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 972 (2d Cir. 1989)

     A.   <u>Irreparable Harm</u>

     "To establish irreparable harm, plaintiffs must demonstrate
an injury that is neither remote nor speculative, but actual and
imminent.  The injury must be one requiring a remedy of more than
mere money damages.  A monetary loss will not suffice unless the
movant provides evidence of damage that cannot be rectified by
financial compensation."  <u>Id.</u>

     Irreparable harm exists "where there is a threatened
imminent loss that will be very difficult to quantify at trial."
<u>Tom Doherty Assoc., Inc. v. Saban Entertainment Inc.</u>, 60 F.3d 27,
38 (2d Cir. 1995). "[P]reliminary injunctions are proper to
prevent a defendant from making a judgment uncollectible, and a
preliminary injunction is always appropriate to grant
intermediate relief of the same character as that which may be

6

granted finally." <u>Republic of Phillipines v. Marcos</u>, 806 F.2d 344, 356 (2d Cir. 1986) (quotation marks and citations omitted), <u>cert. denied</u>, 481 U.S. 1048 (1987).

III.   <u>CONCLUSIONS OF LAW</u>

A.   <u>Plaintiff's Motion for TRO/Preliminary Injunction</u>

The issues pending before the court in plaintiff's motion for temporary restraining order and preliminary injunction are (1) whether this dispute falls within the arbitration clause of the Lease, and (2) if so, whether Prospect Plaza Improvements can elect to proceed with a summary process action rather than arbitration.

Tenant relies on paragraph 29.1 of the Lease for its position that this dispute must be submitted to arbitration:

> In the event that Tenant shall receive written notice from the Landlord of any alleged default of Tenant under this Lease, for other than the payment of any item of rent or additional rent, and if Tenant shall notify Landlord in writing, within fifteen (15) days after receipt of such notice from Landlord, that it disputes Landlord's contention that such default has occurred, then such matter shall be submitted to arbitration for determination.

Article 38.1 further defines the parties' agreement to arbitrate:

> In any case where this Lease provides for submission of a dispute or matter to arbitration, the same shall be settled by arbitration in Hartford, Connecticut in accordance with the procedural rules then obtaining of the American Arbitration Association or any successor thereto.

Landlord contends that, pursuant to the same paragraph of the Lease, 29.1, it has the option to resort to summary process

7

rather than arbitration to resolve these disputes.

> If any default of the Tenant hereunder shall continue uncorrected . . . (b) as to any obligation of Tenant under this Lease, other than the payment of any item of rent or additional rent; for thirty (30) days after written notice thereof from Landlord to Tenant, then Landlord may, by giving then (10) days written notice to Tenant, at any time thereafter during the continuance of such default either: (x) terminate this Lease; or (y) re-enter the Demised Premises by summary proceedings or otherwise, expelling Tenant and removing all property therefrom and reletting the Demised Premises at the best possible rent obtainable . . .

(1) <u>Arbitration</u>

On May 21, 2010, Landlord served written notice on Tenant that Tenant was in default under the Lease for performing structural alterations under paragraphs 9.3(e) and 9.3(f) without the Landlord's prior written consent.  On May 25, 2010, Landlord served Tenant with a Notice to Quit the premises on or before June 8, 2010, alleging the Tenant to be in default. Specifically, Landlord argues that Tenant has violated the Lease by performing alterations in excess of $30,000 without Landlord's consent. Tenant sought the consent of the Landlord on at least one occasion, April 9, 2010.  Landlord denied its consent on April 16, 2010, May 14, 2010 and May 19, 2010.  Paragraph 9.3 of the Lease provides in pertinent part:

> Tenant shall give Landlord prompt notice of any alteration required or permitted to be performed by Tenant under any provision of this Lease if the reasonable cost of the alteration exceeds Thirty Thousand and 00/100 ($30,000.00) Dollars.  Tenant may make alterations to the Demised Premises, subject to the following provisions:

> (e) Tenant may make structural alterations incident to the

use of the Demised Premises for a conventional or warehouse
supermarket (including, without limitation, the construction
of a mezzanine of up to three thousand (3,000) square feet
and of a vestibule as set forth in this Section 9.3) without
Landlord's consent but subject to the other requirements of
this Section 9.3; provided, however, that any structural
alteration made during the last twelve (12) years of the
term of this Lease shall not be made without Landlord's
prior consent, not to be unreasonably withheld or delayed,
unless Tenant shall then exercise one or more Extension
options so that the term shall not expire for at least
twelve (12) years from the date Tenant commences such
alterations.[1]

(f) except as otherwise provided in this Section 9.3, Tenant
shall not make any exterior or structural alterations
without obtaining Landlord's prior written consent provided,
however, that with regard to structural alterations which
are minor in nature and which do not change the
architectural integrity and concept of the Shopping Center,
Landlord shall not unreasonably withhold its consent to the
same provided further, that such alterations do not change
the floor area or configuration of the Demised Premises.

The Tenant disputes the landlords allegations of default and

alleges that the Landlord's consent has been unreasonably

withheld and delayed.

Whether the Tenant is in default of the Lease is not for

this Court to decide.  However, the Court finds that, pursuant to

paragraph 29.1, Tenant's right to arbitration is clear.  Neither

party has argued that the Lease contains any exceptions to  this

right.  Additionally, pursuant to the terms of the Lease,

paragraph 29.1, the 30 day period afforded tenants to cure any

---

[1] The parties dispute whether the Lease's expiration date is
within the last twelve (12) years.  Currently the lease expires
on July 31,2013; however, the Lease contains two five-year
options to extend.

9

breach commences with receipt of the arbitrator's written decision finding a breach.

The arbitration clause contained in paragraph 38.1 uses "the typically broad language that makes arbitrable any Lease provision which provides for submission of a dispute or matter to arbitration."  <u>Big Y Foods, Inc. v. Conn. Properties Tri Town Plaza, LLC</u>, 985 F. Supp. 232 (1998), citing <u>WorldCrisa v. Armstrong</u>, 129 F.3d 71, 74 (2d Cir. 1997).

In accordance with the strong federal policy favoring arbitration, the Lease's broad arbitration agreement creates a presumption of arbitrability.  "Any doubts concerning the scope of the arbitable issues should be resolved in favor or arbitration unless it can be said with positive assurance that the arbitration clause does not cover the dispute."  <u>Id.</u>

In light of the federal policy favoring arbitration and the broad arbitration agreement contained in the Lease, the parties must submit their dispute to arbitration.  <u>Id.</u>; <u>See</u> <u>e.g.</u>, <u>McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.</u>, 858 F.2d 825, 832 (2d Cir. 1988)("If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction of the contract and of the parties' right and obligations under it are within the jurisdiction of the arbitrator").

(2) <u>Landlord's Summary Process Action</u>

Next, Tenant seeks to enjoin Landlord from commencing a summary process action.  Landlord argues that the Anti-Injunction Act bars the Court from enjoining Landlord's summary process action.  However, at this point, the summary process action has not commenced and is not a pending state action; thus the Anti-Injunction Act does not apply.

The Anti-Injunction Act, 28 U.S.C. § 2283, bars federal courts from enjoining pending state court proceedings.  At this point in the action, however, Section 2283 does not present a barrier to Landlord's commencement of summary process since the statute does not "preclude injunctions against the institution of state court proceedings, but only [bars] stays of suits already instituted." <u>Dombrowski v. Pfister</u>, 280 U.S. 479, 484 n.2 (1965).

The notice to quit served by the Landlord does not itself commence an action.[2]  See <u>O'Keefe v. Atlantic Refining Co.</u>, 132 Conn. 613, 622(1946) ("The notice to quit under the statute is the basis for the inauguration of an action at law. There is nothing in the statute or the purpose of the notice which makes

_____

[2] Notice to Quit: The notice to quit asks that the tenant leave the apartment by a date in the notice.  The notice also gives the tenant the reason why the tenant is being asked to leave.  The notice to quit is only a request that the tenant voluntarily leave the apartment.  The notice to quit is not an order to leave.  <u>A Guide to Housing Matters</u>, State of Connecticut.

it a part of any particular action of summary process." (Internal quotation marks omitted.)). <u>See also</u> <u>Peter-Michael, Inc. v. Sea Shell Associates</u>, 18 Conn. L. Rptr. 656, 660 (1997) rev'd on other grounds, 244 Conn. 269,("for purposes of [the prior pending action] doctrine, the better question is not when each case was 'commenced' but rather when it first began to 'pend,' i.e., when it was actually filed in court"). As such, the Anti-Injunction Act is inapplicable to the instant situation.

Despite the Court's power to enjoin Landlord from commencing their summary process action, it is unnecessary to do so. The terms of the Lease specifically, Paragraph 29.1, allows the Landlord to re-enter the Premises by summary proceedings where Tenant has breached its non-payment obligations. However, Section 29.1 also provides that the Tenant may dispute Landlord's contention that a default has occurred by written notice and the matter will be submitted to arbitration. Section 29.1 further provides that, "if said arbitration shall determine that Landlord's contention is correct, then Tenant's time to cure such default shall . . . commence to run from the date that Tenant shall receive written notice of such arbitration decision." Hence, no injunction is needed to protect Tenant plaintiff from losing possession of the property while the arbitration is being conducted.

B.   Defendant's Motion for TRO/Preliminary Injunction

Landlord requests that Tenant be enjoined, restrained and prevented from continuing to make alterations at the Leased premises.  Landlord argues that Tenant has violated paragraph 9.3 of the Lease by performing alterations in excess of $30,000 without its consent.  Landlord contends that Tenant has provided an incomplete set of the plans and, as such, Landlord cannot sufficiently conduct the necessary due diligence to determine whether the alterations will affect the structural integrity of the building.  Landlord agrees that the issue of default is arbitrable; nonetheless, Landlord asks the Court to maintain the status quo and prevent Tenant from performing additional alterations on the premises.

The Court has discretion to grant a preliminary injunction to preserve the status quo pending arbitration of the issue of default.  Erving v. Virginia Squires Basketball Club, 468 F. 2d 1064, 1067 (2d Cir.1972)(In proper case, only way to preserve status quo during pendency of arbitration proceeding is by granting injunctive relief.)  "The fact that a dispute is to be arbitrated does not absolve the court of its obligation to consider the merits of a requested preliminary injunction; the proper course is to determine whether the dispute is "a proper case" for an injunction."  Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of NY, Inc., 749 F.2d 124, 125 (2d Cir.

13

1984); see also Merrill Lynch, Pierce, Fenner & Smith v. Bradley, 756 F. 2d 1048 (4th Cir. 1985)(Where a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a "hollow formality.")

While the Court is empowered to grant a preliminary injunction pending arbitration, it declines to do so at this point.  Landlord has not made a showing of irreparable harm; thus far, Landlord's arguments are purely speculative.  However, if after conducting an examination of the premises and reviewing the alterations, both proposed and completed, Landlord is prepared to make such a showing, Landlord may renew its application for preliminary injunction.

IV.  CONCLUSION

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. #9], construed as a Petition to Order the Parties to Arbitration [see Doc. #8], is **GRANTED**. In light of these lease provisions, it is unnecessary to enjoin the filing of a summary process action in state court at this time. Defendants' Application for Temporary Restraining Order and Preliminary Injunction [Doc. #13] is **DENIED** without prejudice to renewal prior to the opening of the store to the public, should

14

defendants develop evidence concerning the structural integrity and/or safety of the premises.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989)(per curiam); <u>FDIC v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 28th day of June  2010.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE